## 32800. THORNTON *et al. v.* KING.

DECIDED FEBRUARY 17, 1950. REHEARING DENIED MARCH 9, 1950.

*Haas & Hurt, J. Corbett Peek Jr.*, for plaintiffs in error.
*J. C. Bowden, A. G. Smith*, contra.

SUTTON, C. J. George King filed an action in the Civil Court of Fulton County against the D. B. Thornton Company, a partnership composed of D. B. Thornton and Mrs. Lucy Bagley

Thornton, and C. N. McCurdy, for $1250 damages to his automobile caused by the negligence of the defendants. McCurdy was not served and he was eliminated as a party defendant. A judge of the civil court, before whom the case was tried without the intervention of a jury, found for the plaintiff for $800 and rendered judgment accordingly. The defendant company moved for a new trial, this motion was overruled, and the case is here on exceptions to rulings on demurrer and to the judgment overruling the motion for a new trial.

The petition, as amended and after certain portions were eliminated by rulings on demurrer, contains, among others, the following allegations with reference to the defendant company: The defendant has injured and damaged the plaintiff to the extent of $1250. On or about April 6, 1948, a truck owned by defendant, heavily loaded, was being driven on Pryor Road by Lonza (Alonzo Harris), an employee of the defendant, who was in charge of the truck and acting within the scope of his employment. McCurdy was driving his automobile at the same time and place, and suddenly, without warning or notice, turned his automobile into the path of said truck. The truck and automobile were being driven as aforesaid about 1:30 p. m. at or near 1485 Pryor Road, and the truck was being driven at 45 or 50 m.p.h., and Harris, the driver, was intoxicated. The truck and the automobile were headed in a southerly direction, and the driver of the truck attempted to pass the automobile, but could not, and instead of continuing on Pryor Road the driver of the truck caused it to run into a parking lot on the left (east) of said Pryor Road, where the plaintiff had parked his Lincoln sedan in the rear of another automobile. The driver of the truck steered the truck into and against the rear end of the plaintiff's automobile, and the plaintiff's automobile was crushed between the truck and the automobile parked in front of it. The plaintiff's automobile was so damaged by the impact that it cannot be repaired. The defendant was negligent: "(1) In operating said truck at a rate of speed, so as not to be able to stop the same when and if necessary therefor. (2) In not having said truck under control at the time and place when the same was run into and against plaintiff's automobile as aforesaid. (3) In having a driver therefor who would and did drink intoxicants,

and thereby became so incompetent as to run said truck against plaintiff's said automobile, by reason of being so stimulated as not to have full control of his actions, and losing control of the operation of said truck as alleged in this petition. (4) In failing to check the speed of said truck before running the same onto said parking lot and against plaintiff's automobile. (5) In operating said truck in such way as alleged herein so that the same could not and was not stopped before running the same into and against plaintiff['s] said automobile. (6) In driving said truck heavily loaded on said highway on which travel of vehicles is continuous; at and in a way to lose control thereof, and steer the same on and into a parking lot, and against plaintiff's automobile." It was also alleged "that defendants could have avoided said destruction of plaintiff's automobile by the exercise of ordinary care and due dilligence, by driving said truck at a reasonable rate of speed, by having the same under control, and by so driving said truck as to have regard for others that might be on said highway."

The plaintiff, George King, testified as follows: On April 6, 1946, he was inside a building in the 1400 block on Pryor Road mixing mortar when he heard brakes "crying" and he looked and saw a truck trying to pass a Ford automobile, and the driver of the truck cut left toward his (plaintiff's) automobile parked off the street and it was struck in the rear, carried around for 12 feet, and the truck ran into another automobile in front of his automobile and turned over on this automobile. The door where he was working is on the street side of the building and is 8 or 10 feet wide, and the building is about 15 feet from the street. There was a tree in front of his automobile, and the impact of the truck drove his automobile straight into the tree. The truck was equipped for hauling ready-mixed cement, and was loaded with cement at the time. The plaintiff's car was mashed and demolished; and the motor was jammed into the body. A Mr. Millirons took the automobile and put it in storage for the plaintiff, and the plaintiff finally gave it to him for storage due. Harris, the driver of the truck, asked the plaintiff when the collision first happened who owned the automobile, the plaintiff told him he did, and Harris said, "You don't have to worry, the company will fix your car." As repeated by the plaintiff later,

the statement was, "You don't have to worry, I am sorry, it was all my fault, but the company will fix your car." The plaintiff could not say definitely that Harris was drinking, but his breath smelled like alcohol, and he acted somewhat unusual. Harris told the plaintiff that he was trying to pass the Ford automobile and saw that this automobile was so far over to the left that he would hit it, and he lost control of the truck trying to keep from hitting the Ford automobile, and ran into the plaintiff's automobile. The automobile that the driver of the truck was trying to pass was turning in to park where the plaintiff's automobile was parked, and when the truck turned over the front of the truck was on the back end of that automobile. When the plaintiff saw the truck in motion it was skidding. The plaintiff had driven automobiles for 22 years and from seeing automobiles in motion he could estimate their speed, and he estimated the speed of the truck as 35 or 40 m.p.h. Harris told the plaintiff at the time of the collision that he was working for D. B. Thornton. The plaintiff had owned 15 automobiles at various times, and from having driven and used automobiles he could estimate their values, and the fair market value of his automobile immediately prior to being damaged was $1250. He paid $1055 for it and had some work done on it, which he described and he also testified as to the damage to his car and that he received $7 for it over and above the storage charge. When he was called as a witness in rebuttal of testimony offered by the defendant he reiterated much of his original testimony, and testified that Frank Barberi, an employee of the defendant, stated to him on the scene, "Boy, you don't have to worry. We'll fix your car up. See what it will cost to get it—you see what they will charge to fix it. Here is a mechanic now."

W. R. Millirons, a witness for the plaintiff, testified that he went to the scene of the collision shortly after it happened and found one of the D. B. Thornton ready-mixed concrete trucks turned over on the top of a Ford coupe automobile and George King's automobile was off the highway and had been driven into a tree and another automobile by the truck. This witness was in the business of picking up wrecks of automobiles and is a mechanic by trade, and had been in that business since he was big enough, was raised in a garage, and for 15 years had been

doing the actual repairing of automobiles. He examined George King's automobile, a '40 model Lincoln Zephyr 4-door sedan, and due to the wreck it was beyond repair. The value of the automobile after the wreck was approximately $75 and this was consumed by a storage bill to him and his father for keeping the wrecked car for about a year at $7.50 per month.

Frank Barberi, sworn for the plaintiff, testified that he was an employee of the D. B. Thornton Company in April, 1948, and still is, and has no interest in the company, except as an employee; that he is sales manager and handles all insurance matters, and that is the reason he went to the scene of the collision; that the driver of the truck at the time of the collision was supposed to be delivering concrete to a job on Allene Avenue in West End.

H. G. Tuggle, a witness for the defendant, testified that he is a police officer of the City of Atlanta, and, on April 7, 1948, investigated a collision on Pryor Road near the A. & W. P. Railroad, and when he arrived at the scene at 1:30 p. m. found that a truck hauling cement had hit a Lincoln and a 1948 Chevrolet automobile; the truck was turned over on the back part of a Ford coupe automobile and both were headed in the same direction, south, and the collision happened on the left side of the street. He examined the automobiles, and the windows in the coupe were broken, there were fragments of glass around, and the frame that held the glass in place on the left side indicated that the window on this side was raised when the truck hit this automobile. From his investigation and experience in matters of this nature he determined that the truck was passing the automobile, that the automobile suddenly turned in front of the truck, and the driver of the truck applied his brakes and attempted to avoid hitting this automobile. His information as to how the vehicles were traveling was based on tire marks in the street, which he was able to distinguish as to each vehicle. The tire marks of both vehicles were on the left side of the street, and those of the rear wheels (of the truck?) were about 40 feet long.

Alonzo Harris, a witness for the defendant, testified as follows: He worked for D. B. Thornton and on April 7, 1948, he was going out Pryor Road and stopped at an intersection. The automobile

in front stopped also. When the automobile in front started again he trailed him for 200 to 300 feet, and the automobile veered to the right, as if to stop, and he (Harris) turned loose his brakes to roll by. The automobile cut back to the left on him, and he applied the brakes, but they did not hold the truck. He was about 40 to 45 feet behind the automobile and traveling about the same speed, 25 m.p.h. There is a driveway off Pryor Road to the right, and the automobile ahead did bear to the right before cutting back to the left. The driver made no signal of his intention to turn. The brakes on the truck were good, and he did everything possible under the circumstances to avoid hitting George King's automobile. The tires on the truck did not drag 40 feet, but after he applied the brakes he went about 10 feet. At the time he was going to the shirt factory, which is located on highway to East Point, with a load of cement. D. B. Thornton's business was located on Decatur Street, and by Pryor Road is the nearest route to where he was going. He did not drink and had nothing to drink on the day in question. He did not tell George King it was his (Harris's) fault, but told him he could not avoid it. He did not say his company would fix the truck, but told him to see his boss man.

Roy Hightower, a witness for the defendant, testified as follows: He was formerly employed by D. B. Thornton, and was riding with Alonzo Harris at the time and place in question, and they were traveling along Pryor Road at a speed of about 25 m.p.h. There was an automobile ahead and both the truck and the automobile slowed up for a traffic light at University, and when the automobile pulled off again, it was about 35 or 40 feet in front. It turned to the right and slowed up, and Alonzo Harris applied his brakes, and the automobile in front then cut across in front of them, the driver making no signal, and Alonzo Harris did everything he could to avoid hitting the automobile. After the collision the frame for the window glass on the other automobile was still up.

■ The assignment of error on the rulings on demurrer not being argued or insisted upon by the plaintiff in error before this court, the same will be treated as abandoned, and no ruling thereon will be made.

■ It is contended in special ground 1 of the motion that

the court erred in admitting any evidence as to the negligence of the defendant, and it appears from this ground of the motion and the record that the only way in which this issue was raised during the trial of the case was by a motion to dismiss the plaintiff's petition on the ground that there were no allegations in the petition as to the negligence of the defendant. According to the record, no objection was interposed to the admission of·any evidence for this reason. The issue as presented is, in effect, an assignment of error on the overruling of the motion to dismiss the plaintiff's petition because the same contained no allegations of negligence, and the ruling on such a motion is a ruling on demurrer, and as such is not properly the basis of a ground of a motion for a new trial. *Harris* v. *Barry Finance Co.*, 76 *Ga. App.* 663, 666 (2) (47 S. E. 2d, 201), *Tompkins* v. *American Land Co.*, 139 *Ga.* 377 (2) (77 S. E. 623, and citations. Furthermore, this ground of the motion is without merit because the allegations of negligence as quoted in the foregoing statement of the case are as they appear in the amended petition after deleting the portions ordered stricken on demurrer.

■ In special ground 2 of the motion error is assigned on the admission in evidence of the testimony of the plaintiff, as follows: "When the accident first happened, Lonza Harris was driving this truck, and he asked who owned the car, and I told him I did, and he said, 'You don't have to worry, the company will fix your car.'" In special ground 3 of the motion error is assigned on the admission in evidence of the following testimony of the plaintiff: "He [Alonzo Harris] said, 'You don't have to worry, I'm sorry, it was all my fault, but the company will fix your car.'" The objections to this testimony, as contended by the plaintiff in error are that Harris had no authority to bind the defendant, and that the testimony was inadmissible hearsay. In special ground 4 of the motion error is assigned on the admission in evidence of the testimony of the plaintiff that Alonzo Harris told him he worked for D. B. Thornton. The ·plaintiff in error contends that this testimony was inadmissible because the declaration or admission of agency by the purported agent is inadmissible in evidence to show agency.

The above special grounds of the motion will be discussed in reverse order. While at the time the plaintiff testified about the

statement that Harris made to him there was no other evidence to this effect, thereafter the record is replete with circumstances indicating and establishing the fact that at the time and place of the collision Alonzo Harris was an employee of the defendant actively engaged in driving one of the defendant's trucks within the scope of his employment, and the record is silent as to any evidence to the contrary. Without dispute Harris was driving a truck loaded with ready-mixed concrete. Millirons testified that the truck was one of the D. B. Thornton ready-mixed concrete trucks. Barberi testified that he was the sales manager of the defendant company and that Harris was supposed to be delivering concrete to a job in West End. Harris testified he was going to the place of delivery by the most direct route. Under these circumstances, the admission in evidence of the testimony of the plaintiff as to what Harris told him about his employment was not harmful error. See *Smith* v. *Hendricks*, 43 *Ga. App.* 361 (158 S. E. 764).

There being evidence that Harris was an employee of the defendant acting within the scope of his employment at the time of the collision, his negligence, if in fact he were negligent, is chargeable to the defendant under the doctrine of respondeat superior, and his admissions or declarations as to his fault, if a part of the res gestae, would be admissible against his employer. From the record it appears that the statements complained of in special grounds 2 and 3 were made by Harris spontaneously and immediately on the occurrence of the collision in question, and as such were actually a part of the res gestae. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." Code, § 38-305. "The admissions by an agent or attorney in fact, during the existence and in pursuance of his agency, shall be admissible against the principal." Code, § 38-406. Also, see Code, § 4-315. The testimony here complained of was admissible for the purpose of showing or shedding light on whose negligence was responsible for the collision. For a ruling to the same effect, see *Southeastern Express Co.* v. *Nightingale*, 33 *Ga. App.* 515 (1) (126 S. E. 915).

■ The plaintiff in error contends in special ground 5 of the
■

motion that the court erred in allowing the plaintiff to testify as to the speed of the truck driven by Harris. A portion of the colloquy which took place during the trial in this connection is as follows: Counsel for the plaintiff: "From seeing automobiles in motion, can you estimate their speeds?" The plaintiff: "Yes, sir." Counsel for the plaintiff: "From seeing that one in motion, how fast would you say it was going?" Counsel for the defendant: "I object to that; he has already testified he can't swear to the speed." Counsel for the plaintiff: "I am asking now for his estimation. What is your estimation as to the speed?" The plaintiff: "Well, my estimation, I couldn't swear to it, but I would say that he was going around 35 to 40 m.p.h." The Court: "Don't say anything else that you say you couldn't swear to; you can't testify to anything that you can't swear to." Counsel for the plaintiff: "Can you swear to how fast your estimation is that truck was going?" The plaintiff: "Maybe I don't understand; I would like to say this: I can't stand on the ground and say that he was traveling 25 to 35; but myself, I would say he was traveling 35 to 40 miles an hour, but I couldn't say exactly how fast." Counsel for the defendant: "Your Honor, I move to strike the testimony regarding his estimation of speed, due to the fact that he has said he couldn't swear how fast it was going, but how fast he thought it was going." Counsel for the plaintiff: "He finally said it was 35 to 40 miles an hour." The Court: "We are trying this case without a jury, and I will overrule the objection. I will let in what he said." It was not error to admit this testimony.

■ The contention is made in special ground 6 of the motion that the court erred in allowing the witness Millirons to testify as to the value of the plaintiff's automobile after the collision. As basis for the objection it is contended that the witness was not qualified to give his opinion in this matter. The witness had previously testified that he was in the business of picking up wrecked automobiles and was an automobile mechanic by trade, and had been doing the actual repairing of automobiles for 15 years. No error is shown by this ground of the motion.

■ The usual general grounds of the motion, and grounds 7, 8, 9, and 10, which are elaborations thereon, will be considered as a unit, inasmuch as the ultimate issue thereon is the legal

sufficiency of the evidence. The specific issues which are material in this case are whether there is evidence authorizing a finding that the driver of the truck was an employee acting within the scope of his employment at the time of the collision, and if so, under an application of the doctrine of respondeat superior, whether there is evidence authorizing a finding that the driver was guilty of negligence constituting the proximate cause of the damage to the plaintiff's automobile, and if so, the amount of the damage. The first of these issues has, in effect, already been decided adversely to the plaintiff in error by the rulings on special grounds 2, 3, and 4 of the motion, and no useful purpose would be served by a repetition of the evidence tending to establish the fact that Harris was an employee of the defendant company acting within the scope of his employment at the time and place in question. As to the second of these issues as above stated, there is evidence tending to establish the fact that Harris may have been operating the truck at such a speed and in such proximity to the vehicle ahead under the conditions existing as to have been unable to stop or avoid injury to the plaintiff's vehicle, and that if such a situation existed, it was a situation created in part, at least, by his negligent acts. The fact that there is also evidence tending to show that McCurdy, the driver of the automobile in front, was negligent, and that his negligence may also have been the proximate cause of the collision, is no defense. It is well settled that two concurring acts of negligence by persons acting independently may constitute the proximate cause of an event, and that the liability arising therefrom is several as well as joint. See *Callahan* v. *Cofield*, 61 *Ga. App.* 780 (7 S. E. 2d, 592.) As to the last issue as above stated, the amount of the judgment was well within the range of the evidence in this respect. The judgment for the plaintiff by the court, acting without the intervention of a jury, was authorized by the evidence.

■ It follows that the trial judge did not err in overruling the defendant's motion for a new trial.

*Judgment affirmed. Felton and Worrill, JJ., concur.*